USDC SCAN INDEX SHEET











USA

CARLISI

ACR    7/8/97    11:23
3:92-CR-00026
*665*
*CRMEMSUP.*

MARIO G. CONTE
California Bar No. 093211
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467

Attorneys for Defendant Spilotro

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HON. WILLIAM B. ENRIGHT)

| UNITED STATES OF AMERICA, | ) Criminal No. 92CR0026-E |
|---|---|
| Plaintiff, | ) |
| v. | ) **STATEMENT OF FACTS AND POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION** |
| JOHN P. SPILOTRO (6), | ) |
| Defendant. | ) |

I.

**STATEMENT OF FACTS**

On 12 January 1993, the government filed a one count superseding information charging John Paul Spilotro with a violation of 18 U.S.C. § 4-misprison of a felony (extortion). On the same date, Mr. Spilotro pled guilty to the charge in connection with the attempted extortion of Joseph Pignatello by other defendants in this case. Mr. Spilotro admitted that he knew that attempts were being made to extort Mr. Pignatello, but Mr. Spilotro did not report these attempts to the government.

On 5 April 1993, this Court placed Mr. Spilotro on five years probation with the first six months to be served in home detention.

The genesis of the extortion attempt of Joseph Pignatello concerned monies that others believed he owed to Anthony Spilotro, the late brother of John Spilotro. In fact, no money was owed.

As a result of gambling debts, Mr. Pignatello owed Anthony Spilotro approximately $100,000. In 1983, Mr. Pignatello borrowed approximately $110,000 from Attorney Neal Beller in Las Vegas, Nevada, in order to pay off the loan. Anthony Spilotro was given $55,000 of the $110,000 that was borrowed from Attorney Beller. Subsequently, Mr. Pignatello gave John Spilotro $24,000 and $20,000 on two occasions in order to satisfy the debt. In a telephone conversation with Mr. Beller, it was confirmed that Mr. Pignatello had, in fact, borrowed $110,000 from him and had ultimately repaid the entire sum.

In 1988, attempts were made to collect this sum of money from Mr. Pignatello, when, in fact, it had already been repaid. When John Spilotro found out about these attempts to collect the money, he confirmed that no money was owed to his late brother. Indeed, in an attempt to assist Mr. Pignatello, John Spilotro met with other individuals at a coffee shop in Las Vegas and conveyed the fact that Mr. Pignatello did not owe Anthony Spilotro any money. This fact was corroborated in a tape-recorded conversation from the Metropolitan Correctional Center between Joseph Pignatello and another individual called John. In their discussion, Joseph Pignatello states how John Spilotro met individuals in a coffee shop and told them Mr. Pignatello did not owe any money to Anthony Spilotro.

## II.

### ARGUMENT

Mr. Spilotro moves this court for an early termination of his probation based upon his exemplary performance. On July 5, 1997, he will

have already served four years and three months of probation without any violations or other problems.

### A. Early Termination of Probation is Authorized Pursuant to 18 U.S.C. § 3564(c) and Fed. R. Crim. P. 32.1(b)

Both 18 U.S.C. § 3564(c) and Fed. R. Crim. P. 32.1(b) contemplate and allow for the early termination of probation. Section 3564(c) states in pertinent part:

> **(c) Early termination.** The court, after considering the factors set fort in section 3553(a) to the extent that they are applicable, may, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, terminate a term of probation previously ordered and discharge the defendant at any time in the case of a misdemeanor or an infraction or at any time after the expiration of one year of probation in the case of a felony, if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice.

Federal Rule of Criminal Procedure 32.1(b) sets out the procedure to be followed when either side seeks a modification of a probationary term. It states in pertinent part:

> **(b) Modification of Probation or Supervised Release.**
> A hearing and assistance of counsel are required before the terms or conditions of probation or supervised release can be modified, unless the relief to be granted to the person on probation or supervised release upon the person's request or the court's own motion is favorable to the person, and the attorney for the government, after having been given notice of the proposed relief and a reasonable opportunity to object, has not objected. An extension of the term of probation or supervised release is not favorable to the person for purposes of this rule.

//

Therefore, in a case like this, where the defendant is seeking early termination of his probation, the court may grant the request without a hearing, if government counsel does not object.

**B. The Statutory Factors In 18 U.S.C. § 3553(a) Weigh In Favor of An Early Termination Of Mr. Spilotro's Probation.**

The early termination statute, 18 U.S.C. § 3564(c) directs the court to examine the section 3553(a) factors in determining whether probation should be terminated. Those factors include the nature and circumstances of the offense, the defendant's history and characteristics, the need for the sentence to reflect the seriousness of the offense, the need for deterrence, the need to protect the public from future crimes, the need to give the defendant training or treatment, the applicable Guidelines, the need to avoid unwarranted sentencing disparities among similarly situated defendants, and the need to provide restitution to any victims.

1. <u>Nature of offense</u>

In this case, Mr. Spilotro pleaded guilty to misprison of felony, 18 U.S.C. § 4, a Class D felony. His plea was based on the fact that he did not report extortion attempts on Joseph Pignatello by Chris Petti. Indeed, John Spilotro attempted to intercede on Joseph Pignatello's behalf and was informed by Petti that his efforts were "fool-hearty and all-advised." See PSR at 4. Ultimately, believing that Joseph Pignatello had spread rumors about Mr. Spilotro's brother, Anthony, Mr. Spilotro disassociated himself from Mr. Pignatello. There was no evidence that Mr. Spilotro had ever directly extorted Mr. Pignatello. Rather, his plea was based on inaction rather than affirmative action.

//

1       2. <u>Defendant's history</u>

2       Mr. Spilotro does not have any prior criminal history, other
3 than the instant offense. He is currently 56 years old. He has been
4 married for over thirty-four years to Arlene Spilotro and they have three
5 children from this union. John, age 33, an attorney in Las Vegas and
6 married with two children; Joseph, age 29, a Laboratory Scientists at St.
7 Rose's in Las Vegas, and married; Stephanie, age 26, a recent graduate of
8 the University of Oklahoma and about to begin graduate school in
9 educational psychology at the University of Nevada, Las Vegas.

10       3.    <u>The Need For the Sentence to Reflect The Seriousness of
11 The Offense, Afford Deterrence, Protect The Public, and
Provide Mr. Spilotro With Training or Treatment Has Been
12 Accomplished.</u>

13       The probationary sentence imposed on Mr. Spilotro took into
14 account the offense, his characteristics and has provided "just
15 punishment" (8 U.S.C. § 3553(a)(2)(A)), for the offense.

16       This court fashioned a sentence which confined Mr. Spilotro to
17 his home for six months, and then placed him under supervision for the
18 past four years and three months. Because of his complete lack of
19 criminal involvement for over fifty years of his life, there is no reason
20 to believe that Mr. Spilotro will engage in any further criminal conduct,
21 and thus deterrence, (18 U.S.C. § 3553(a)(2)(B)), if any is warranted,
22 has been achieved. His performance on probation reflects this, and amply
23 demonstrates why the public needs no further protection (18 U.S.C. §
24 3553(a)(2)(C)), from Mr. Spilotro. His work at the American Cancer
25 Society is certainly symbolic of his value to the public rather than any
26 indicator of their need for protection from further crimes by Mr.
27 Spilotro. <u>See</u> Exhibits A, B, and C attached. Finally, Mr. Spilotro
28 requires no educational or vocational training, medical care or other

correctional treatment. 18 U.S.C. § 3553(a)(2)(D). There is no current probationary condition that even requires Mr. Spilotro to seek out an education or vocational training, and he is not in need of any medical care or other correctional treatment.

4.  **The Sentence.**

This court has already considered the appropriate guidelines and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(4)(A),(6). The sentence basically followed the PSR's recommendation of five years probation with four months of community confinement. However, there is nothing inappropriate in this court reviewing Mr. Spilotro's situation at this time to see if any further probationary supervision is necessary given all of the factors of 18 U.S.C. § 3553(a). This is why Fed. R. Crim. P. 32.1(b) provides that "[p]robation conditions should be subject to modification, for the sentencing court must be able to respond to changes in the probationer's circumstances as well as new ideas and method of rehabilitation." Advisory Committee Notes; See Generally American Bar Association Standards Relating to Probation § 3.3.

Further supervision of Mr. Spilotro until his termination of probation in April 1998 would accomplish no more than what has already been accomplished. Mr. Spilotro has performed so well on probation that each month he is only required to send in a form attaching his pay stub from AMS Legal Services, the hours he worked for the American Cancer Society, the total dollar amount in his bank account, and the family's monthly expenses. An early termination of his probation would free up probationary resources for use on other individuals who require them.

Finally, there is no need to provide any restitution to any victims in this case. 18 U.S.C. § 3553(a)(7).

### C. The United States Already Has Achieved the Goals of Probation in Mr. Spilotro's Case.

The goal of probation is to monitor a defendant's behavior to make sure that he does not commit any new crimes, abides by the conditions of probation, and presents no future problem. Mr. Spilotro has not been involved in any new additional criminal conduct and has complied with all of the conditions of probation imposed by the Court. All of the goals have been achieved.

## IV.

## CONCLUSION

For the foregoing reasons, Mr. Spilotro respectfully requests that this Court grant this motion.

Respectfully submitted,

Dated: July 7, 1997

MARIO G. CONTE
Federal Defenders of San Diego, Inc.
Attorneys for Defendant Spilotro

H:\MGC\MOTN\SPILOTRO.MTN

# EXHIBIT A



**AMERICAN CANCER SOCIETY®** Southwest Division, Inc.

May 7, 1997

Dear Judge Enright:

This letter is written on behalf of John Spilotro, volunteer for the American Cancer Society, Las Vegas Region. Mr. Spilotro has served as a volunteer for nearly three years. As Program Director I oversee statewide program activity in tobacco control and coordinate skin cancer education programs for the Las Vegas community. Mr. Spilotro has played a key role in these two areas of cancer control.

The American Cancer Society host a variety of tobacco control programs including smoking cessation classes, one to one counseling to those wanting to quit, as well as free educational materials to teachers grades Preschool through 12th. In addition, we offer worksite education, assisting companies on how to develop a no smoking policy and employee smoking cessation programs. Also, we have volunteer speakers and trainers ready to help community organizations.

Mr. Spilotro is our in-house one to one cessation counselor. He assist smokers who are attempting to quit or are on the brink of starting, after refraining from smoking for a substantial period of time. Mr. Spilotro understands the smokers addiction to nicotine and can ease the smoker from lighting up a cigarette. Studies have shown that one to one counseling is more effective than a cessation program. Smokers are looking for immediate assistance to help them cope with cravings.

When teachers need ACS educational materials, Mr. Spilotro is the designated contact person to insure that age appropriate materials are given to enhance their tobacco lesson plan.

Annually, ACS in conjunction with Las Vegas dermatologists, provide free skin cancer education and screening to the public. Each year we screen approximately 500 people. Mr. Spilotro has been instrumental to the success of this program which starts in May and runs until August. He sets up the educational and screening rooms the day prior to the program. The day of the program he greets each participant, insures each participant completes a patient release form, shows a short educational video on skin cancer and answers their questions. Finally, he assist the physician by placing participants into the screening rooms. Participants who are diagnosed with a melanoma receive a follow up call from Mr. Spilotro. He works with each participant in insuring they make an appointment with a physician.

Mr. Spilotro is the most dedicated volunteer that I have met during my twelve years tenure with the American Cancer Society. He takes it upon himself to learn about cancer and to address the needs of the public. His commitment to the Society surpasses any expectations I could have for a volunteer. The Society would be lost without him and his knowledge on cancer. In a nonprofit agency it is rare to find a lay volunteer who is as competent and sincere as Mr. Spilotro. He is definitely one of a kind.

Sincerely,

*Mandy A. Canales*

Mandy A. Canales
Program Director

# EXHIBIT B


Southwest Division, Inc.

May 2, 1997

Dear Judge Enright:

I have been associated with Mr. John Spilotro during my tenure with the American Cancer Society. During the past thirty-eight months that we have worked together, I can honestly say that John is the most dedicated and proficient volunteer that I have ever run across. He consistently exceeds what would be expected of any volunteer with our organization. When he came on board with our organization he agreed to act as a concerned, empathetic, and informed contact person for callers to the American Cancer Society's General Cancer Services Program. He would assess the needs of patients, family members, and friends who call, and seek appropriate resources, information, and guidance referrals not only to services that our organization provided as well as other agencies or sources in the community. Since that time, John has stepped up at every request to assist in program and special event activities that fall outside of the scope of his original involvement.

John is a very pleasant and thoughtful person, and I would personally attest to his integrity as well as his genuine interest in the patients he assists on a daily basis. John has become such a proven asset to our organization, that patients and their families will ask to be referred to him specifically. He not only provides the patients with the expertise they so greatly desire when they have a positive diagnosis of cancer, but manages to bring a smile to their faces amiss their personal tragedies. It is because of his dedication to the patients in our community that John was the recipient of our statewide Quality of Life Award which is given in recognition of exemplary volunteer achievement that enriches the quality of life of people with cancer and their families.

John has come to be not only a dear friend to me, but truly my "left hand man". When I travel for business, he is always willing to pick up the slack and put in the extra time needed to keep the operation running smoothly. He has also assumed the position as our General Cancer Services Team Leader. By assuming this position, he works with incoming volunteers on initial trainings, recertification and ongoing involvement with the program. John has been asked on several occasions to travel throughout the region to discuss not only his involvement with the organization but his concerns on the way our programs are administered to the public. He has been reluctant to extend his traveling boundaries outside of the city limits due to the conditions of his parole. It is under these constraints that he normally requests that someone take his place, unfortunately less qualified to give an accurate account of activity and suggestions for improvement.

Words can not begin to give justice to all that John means to our organization, and my department specifically.

Sincerely,

Jeanette Rowland
Jeanette Rowland
Program Manager
General Cancer Services/Cancer Information Referral

*Serving the greater Las Vegas market*

1325 E. HARMON, LAS VEGAS, NV 89119 • 702/798-6877 • FAX 702/798/0530

# EXHIBIT C

**JESSICA SCULTHORPE**
**1872 LONGMEADOW**
**HENDERSON NV 89015**
**702-566-7099**

April 20, 1997

The Honorable Judge Enright

RE: John Spilotro

Dear Judge Enright:

I am writing to you on behalf of Mr. John Spilotro. I have had the pleasure to know John for several years now. Not only is he a true friend, but a caring individual. It shows not only with his friends, but also with his family. He never fails to take the time to show someone how much he loves and cares for them.

John spends time volunteering within the community. He is a volunteer for the American Cancer Society and helps people deal with the realization of this very nasty and oft time deadly disease. I have also had the opportunity to spend time volunteering at the Senior Center with John and his wife Arleen. They both care about what they are doing there and it shows in the way they treat and listen to the seniors around them. It takes a very special person to do the type of work John does and he is just that...SPECIAL.

I trust John with my family, my money, my home and my life.

Sincerely,

Jessica Sculthorpe